[Civil No. 3174.   Filed December 21, 1932.]

[17 Pac. (2d) 327.]

C. H. KUNSELMAN, Appellant, v. FRED F. KASER, Appellee.

Mr. John W. Ray for Appellant.

Mr. E. G. Frazier and Mr. Allan K. Perry for Appellee.

McALISTER, C. J.—This is an appeal from an order denying a motion to quash the sheriff's sale made under a special execution issued in the case of Fred F. Kaser against Charles H. Kunselman on a judgment of foreclosure directing the sale of mortgaged property. No question is raised as to the validity of the mortgage or the judgment of foreclosure, but the appeal deals almost wholly with the manner in which the sheriff carried out the special execution.

The record discloses that on the thirty-first day of March, 1928, Charles H. Kunselman and Rody Kunselman executed and delivered to Fred F. Kaser their promissory note for $25,000 bearing eight per cent. interest, the principal being payable in installments and the interest semi-annually. As security for the note its makers executed and delivered at the same time a mortgage on a lot, 110 by 140 feet, located on the west side of Third Avenue, just north of Van Buren Street in the city of Phoenix, and at a later date, to wit, December 14, 1929, and, as additional security therefor, a chattel mortgage on certain personal property, namely, the furnishings in the eight duplexes, or sixteen apartments, situated upon the above described lot. The defendants failed to pay the installments as they became due and on August 14, 1930, the plaintiff filed a complaint containing two causes of action, one foreclosing the realty and the other the chattel mortgage, and on November 24th thereafter a judgment for $28,154.22, principal and interest, together with ten per cent. of this amount additional as attorney's fee, was entered and this was followed by an order foreclosing the mortgage liens and directing the issuance of a special execution calling upon the sheriff to

sell the property, both real and personal, to satisfy the judgment.

Pursuant thereto an execution was issued and the sheriff sold the property, both real and personal, and made a return thereof in which he stated that he had seized and levied upon the property described and noticed the same for sale by publishing notice thereof for twenty-one days next before the day of sale in the "Chandler Arizonan," a weekly newspaper, and by posting for a like number of days three printed copies of the notice in the county of Maricopa, one copy at the door of the courthouse; that at 11 A. M. on December 20, 1930, at the premises known as Rose Place Apartments, 334 North Third Avenue, Phoenix, he offered for sale at public auction the personal property and at 2 P. M. at the door of the courthouse all the real property, and that all of said property was struck off to Fred F. Kaser, plaintiff, for the sum of $31,381.57, that being the highest and best bid and the amount of the judgment and costs.

Within six months following the sale the defendants moved to set it aside upon the ground that the sheriff had not complied with the law in making it and it is the correctness of the order denying this motion that the defendant, Charles H. Kunselman, asks this court to review.

He assigns only one error, namely, that the trial court erred in refusing to set aside the sale and quash the return of both the real and personal property, but he points out in support of this assignment a number of instances in which he claims the sheriff failed to follow the law in making the sale, nearly all of which appear from the return. The first of these that we consider is that the eight separate duplex buildings situated on the lot and known as Rose Place Apartments were sold as one instead of in separate and distinct parcels of land. Section 4222, Revised Code of 1928, permits the latter course to be taken "when

the sale is of real property, consisting of lands that may be sold in parcels'' and the judgment debtor after directing that it be sold this way points out the order in which the parcels may be disposed of. The lot and the duplexes built thereon, both of which were covered by the mortgage, were not, so far as the record discloses, such that they could have been separated into parcels. But if they were, there is no showing that the judgment debtor directed that it be sold otherwise than as a whole. The situation presented is wholly different from that that would have existed had the duplexes been erected on separate and distinct lots and the judgment debtor had directed that they be sold separately and in certain order. In legal effect it is the same as though one large building containing a number of separate apartments had been placed on the lot.

The return shows that the list of personal property which consisted of the furniture in the sixteen apartments numbering about one thousand pieces, was also sold in one lot and not in separate and distinct parcels, and because paragraph 4222, *supra,* provides that where the sale is of personal property it must ''be sold in parcels so as to bring the highest price'' it is claimed that this sale was likewise illegal and should be set aside. The quoted language does not imply that personal property, in this case, furniture, shall in every instance be sold in separate and distinct pieces but always in such parcels as will bring the highest price. This made it the duty of the sheriff in the exercise of his best judgment to sell it in the manner that would attain this result, whether piece by piece, a number of pieces together, or all of them as one, and before a sale of it in either of the two last methods may be set aside it must appear that it would have brought a higher price if sold in the first. There was no showing to this effect and it was undoubtedly the opinion of the sheriff that the method

he chose was the one most advantageous to the mortgagors, and since the furniture had been selected and purchased for the apartments in which it was being used and was still needed, it would seem, in the absence of a showing to the contrary, that he was justified in acting upon the theory that it would bring more if sold as a unit rather than piece by piece. One mortgage covered all of it and the apartments composing the court in which it was in use were sold as a unit.

It is urged further that when the sale is of personal property capable of immediate delivery paragraph 4222, *supra,* requires that ''it must be within view,'' and that since it was not where prospective purchasers could see it when bidding on it the sale is invalid. It is true the furniture was not removed from the various apartments and placed outside where it could be seen at the moment it was being auctioned off, but the sale was at the premises where any purchaser had the privilege of viewing it in the apartments, and this being true the requirement of the statute was sufficiently met, for the furniture was within view of anyone who desired to see it. *Bank of Almyra* v. *Laur,* 122 Ark. 486, 184 S. W. 39; *Earle* v. *Gorham Mfg. Co.,* 2 App. Div. 460, 37 N. Y. Supp. 1037; 23 C. J. 631, par. 588. It was clearly a compliance with the spirit of this provision if not with its exact letter.

It is claimed further that at the time of sale the personal property was not in possession of the sheriff but was then, as well as before and after the sale, in the actual physical possession of the tenants in the apartments and, therefore, could not and, in fact, was not delivered to the purchaser. Paragraph 4219 of the Revised Code of 1928 provides that when the party recovering a judgment has a lien on any property by mortgage or otherwise, or through the levy of an attachment or garnishment, ''no further levy upon

such property shall be necessary, but the same may be sold without further levy.'' The plaintiff, Kaser, had recovered a judgment foreclosing his mortgage lien on the property which at the time was under the control of the receiver who had been appointed by the court at his request for the purpose of taking care of it during the pendency of the action.

The return fails to disclose how much the personal and real property were sold for respectively and for this reason it is claimed the sale should be set aside. This information should appear because the mortgagor has the right of redemption as to real property and unless the amount paid therefor is known he would be able to exercise this right only by paying the purchase price of the personalty also and this, of course, would be unfair to him since the law does not provide for the redemption of that class of property. This would appear to have been an error in preparing the return, however, because the personal property was sold at the premises at 11 A. M. and the realty at the courthouse at 2 P. M. of the same day and in neither instance was it sold for an uncertain sum. Moreover, appellant had this information, for he set it out in his motion to vacate the sale and he admits the error could be corrected by an amended return by the sheriff and would not of itself necessitate a setting aside of the trial court's order.

The price for which the property was sold is claimed to be grossly inadequate but it is not necessary to discuss this proposition, for while the testimony of the appellant and others in his behalf placed the value of the real estate at nearly double and that of the personal property at nearly four times that it sold for, the testimony of appellee and his witnesses was that its value was practically what it brought. It was purely a question of conflicting testimony and

in such instances the ruling of the trial court will not be disturbed.

Soon after the commencement of the action a receiver with power to lease the property and collect the rents during its pendency was appointed and at the time of sale he was still in charge of it and has been since. For this reason appellant contends that the property was not subject to levy and sale under execution and, therefore, that this is not a proceeding to set aside an execution sale but one objecting to the confirmation of a sale made under judicial order in the same case. The fact that it was made by the sheriff instead of the receiver does not, it is contended, prevent its being a judicial sale or obviate the necessity of its being reported to and confirmed by the court. We are unable to concur in this view. The decree of foreclosure directed that the property covered by both mortgages, or so much thereof as was necessary to pay plaintiff's judgment and costs, be sold at public auction and that a special execution issue directing the sheriff of Maricopa county to sell it, and whatever may be the rule where the execution is issued by courts other than those in which the receivership is pending there would seem to be no question of its right to make such an order when the property is in the hands of a receiver appointed by it *pendente lite*. The rule is not that property *in custodia legis* is not subject to levy and sale under execution by the sheriff but that it may not be sold in this way without leave of court, and there would seem to be no more effective way by which a court could manifest its consent than by directing that the property on which the lien is foreclosed be sold and that a special execution issue directing the sheriff to sell it. Upon the rendition of an ordinary money judgment the court does not direct a sale of specific property to satisfy it but in such cases executions are caused to be issued by the successful party and levied

on the property of the judgment debtor in the manner prescribed by statute. A decree foreclosing a lien, however, is different, as will appear from the following excerpt from *Preston* v. *Loughran*, 58 Hun 210, 12 N. Y. Supp. 313:

"In that the court itself, on hearing the facts of the case, orders that the property be sold by a person appointed by the court. The judgment of the court that the property be sold is as authoritative as the judgment of the same court that a receiver be appointed. The mortgaged property is not sold 'without leave of the court,' but is sold by direction of the court. It is not sold 'without any application or adjudication of the court,' but is sold by the adjudication of the court. The plaintiff does not deprive the court of jurisdiction to administer, but administers under the judgment of the court. We think, therefore, that a judgment of the court directing the sale of specific property, and the sale thereunder, do not come within the condemnation applied by the court to ordinary executions issued by the party without special authority. Suppose, for instance, that a mere judgment creditor asked leave of the court to issue an execution when a receiver had been appointed, and that the court granted leave, would not the sale be regular and valid? Now when the court itself orders a sale of specific property by a person appointed by itself, is not that sale valid?"

See *Forest Lake Cemetery* v. *Baker,* 113 Md. 529, 77 Atl. 853; *Southern Bank of Kentucky* v. *Ohio Ins. Co.,* 22 Ind. 181; *Daniel* v. *Reid,* 114 Wash. 211, 194 Pac. 979.

The most serious objection to the manner in which the sale was conducted is the alleged failure to give the required notice of the sale of the personal property. Notice of sale of the realty was published in the "Chandler Arizonan" for twenty-one days next before the sale and printed copies of this notice posted in the county for a like period, one of them being at the door of the courthouse, but nowhere does it ap-

pear, other than by the statement in the sheriff's return, that he noticed the personal property for sale as required both by law and by the mandate of the court, or that any notice of the sale of the personal property was given at all.

There is in the published notice of the sale of real estate a reference to the foreclosure of a chattel mortgage executed December 14, 1929, by Charles Kunselman, a widower, and Rody Kunselman, a bachelor, to Fred F. Kaser, ''upon certain personal property more particularly described in said execution and in sheriff's notice of sale of personal property in the within-entitled matter,'' but this notice did not pretend to describe the personal property or state that it was going to be sold. This reference might suggest, it is true, that such a notice of sale had been or would be given, but in view of the sheriff's statement in the return that he caused ''legal notice of sale to be published daily for twenty-one days next before said sale in the 'Chandler Arizonan,' a newspaper of general circulation published in said county, and by posting three printed copies of said notice in said county as required by law, one copy of said notice being posted at the door of the courthouse of said county, all for twenty-one days before said sale,'' without stating further what precinct the other two copies were posted in and without giving a description of the personal property and informing the public that it would be sold, the inference to be drawn is that notices of the sale of real estate only were posted and that a sale of the personalty was entirely overlooked. If posting copies of the notice published in the ''Arizonan'' is relied on by appellee to show compliance with paragraph 4221, Revised Code of 1928, as amended by chapter 66, Laws of 1929, regarding the notice of sale of personal property, it is clearly insufficient because that section provides that written notice of the time and place of sale of personal prop-

erty shall be posted "in three public places, two of which shall be in the precinct . . . in which the sale is to take place" and that it shall particularly describe the property to be sold. No such notice is to be found in the record. And this being true the sale of the personalty should be set aside, unless notice thereof, as the general statement in the sheriff's return would suggest, was in fact given in accordance with the statute.

To avoid any further proceedings in case it was, the order of this court is that if within ten days after the issuance of the mandate of this court there is filed with the clerk of the superior court of Maricopa county a sheriff's amended return showing that a proper notice of sale of personal property on December 23, 1930, was in fact given as required by law, the order denying the motion to set aside the sale of the personal property will stand affirmed; if not so filed, it will at the expiration of this period be set aside.

ROSS and LOCKWOOD, JJ., concur.